The United States Court of Appeals for the Ninth Circuit is now in session. Be seated. Good morning, everyone. Two of our cases on the docket today have been submitted on the briefs. Those are McGuire v. Motion Industries and Hawk v. Providence Home Services. The remainder of the cases will be argued in the order in which they appear on the docket. And for appellants, I would remind you that the time that appears on the little machine in front of you, it includes any rebuttal time. It's your total time, so you'll want to keep track of that if you'd like to save time for rebuttal. We'll begin with Stoltman v. Federal Express. Good morning. May it please the Court. Scott Hunt, appearing on behalf of plaintiff appellant Diane Stoltman. The lower court consistently made three errors in ruling that plaintiff was not disabled under the Oregon disability discrimination laws. The first error it made was that some of Ms. Stoltman's restrictions due to her impairments were terminated, temporary, excuse me. In particular, it made that ruling in regards to the major life activity of lifting. That is simply not supported by the facts, and I'll explain why in a moment. The second error was ruling that her limitations were minor, while failing to consider the significant restriction on the duration Ms. Stoltman could perform numerous major life activities, in particular walking, standing, and sitting. The third error the lower court made throughout its ruling was that it did not consider the overlap between different major life or evidence that related to different major life activities. It essentially dismissed certain activities as not major life activities or failed to recognize that certain major life activities, such as performing manual tasks and caring for oneself, may overlap, and evidence relevant to one indeed is relevant to both. What are the major life activities in which you claim that your client is, that she is substantially unable to perform that make her disabled? There are numerous ones. Lifting, standing, sitting, walking, performing manual tasks, caring for herself, reading, sleeping. In Oregon, under Oregon law, transportation is a separate major life activity recognized within the statute. We also believe in this case that her limitations on pushing and pulling, bending, twisting, squatting, carrying, all either as a group or individually are major life activities. The primary turning to the lifting major life activity, that's where the court made the error as to temporary. The court relied on the absence of a restriction in one written medical document. It doesn't say that there's no restricting as to lifting. It simply did not list a restriction one way or the other as to lifting. But that reliance on that document is inaccurate because it fails to consider Ms. Stoltman's deposition testimony, in which she stated her restrictions have always been the same. That's at SER00179. Elsewhere, she also stated, as far as I know, I have the same restrictions. They have never been lifted. Counsel, before you use up all your time, I would like you to answer the following. Certainly. Assuming that the evidence creates an issue of fact about the existence of a disability, where is the issue of fact on reasonable accommodation? I hear that accommodations were made of many kinds and that there was an ongoing interactive process with your client. I don't deny that there was an ongoing interactive process, but I believe there was a failure to provide the reasonable accommodation at a minimum of the chair. The testimony is that that was not rejected. Wasn't that still in process at the time? Well, it was still in process, but the process had been ongoing for several months, and she's terminated prior to getting the chair. So for my client's purposes, she never received the accommodation of an ergonomic chair. She never received the accommodation of – I'm sorry. I didn't mean to interrupt you. I'm sorry. She never received an effective headset. She never received an effective keyboard. She was – this is not a case of a failure to engage in the interactive process. It was going back and forth. But part of our argument on the failure to provide the chair is that there's a whole pretext going on about, oh, we need to get it through workers' comp. Oh, we need a prescription. Oh, the prescription you provide isn't sufficient. It's not from a doctor or it's not current. And it goes on and on and on. And ultimately, she never got it. Why is that unreasonable? I mean, why isn't it sort of run-of-the-mill to say, well, if you want special expensive equipment, at least give us something current from a doctor saying that this is what you need rather than just something you personally prefer? I think if the chair had been provided, Judge, your argument would be persuasive. The fact of the matter is the chair is never provided. There is simply no chair ever provided. She's working out of a lawn chair in her home office. Can I stop there because I wanted to clear the record in my mind? Did I read somewhere that when she transferred from, what, Minnesota? Yes. She had these accommodations and she stored them. She didn't bring them with her. She had some of the accommodations, not all of the accommodations. What did she have that she stored? I'm not sure the record establishes that, Judge. In fact, I don't believe it does. I was trying to figure that out, too. It just said that she had, and I don't know what the term was and what I read, but she did have certain things that were provided by the company. She left them in storage and then moved out to the new position and moved into a trailer where she started using the lawn chair. Right. And there may have been some testimony about that, but I don't believe there is testimony in the record, at summary, Judge. I mean, there may have been deposition testimony about it, but I don't believe it's in the record at summary, Judge. The reason that was interesting to me is it appears that the accommodation issue and the equipment, the ergonomic equipment, arose when she came west. So if she had the equipment she needed to do the job when she left Minnesota and left it there, it kind of left me up in the air. Why didn't she bring the stuff with her? I don't have an answer for that. It's not in the record, but I believe there is in the record evidence that the chair that she had in Minnesota wasn't adequate itself, that she fell out of it numerous times. So I don't have a clear answer for you because it's not in the I don't believe it's in the record. What is in the record is raises a question of fact as to whether the chair provided in Minnesota, which she fell out of, was indeed an adequate accommodation. But, again, it's not just the chair. It's other it's files. It's basically office equipment that would have enabled her to work out of her home office. That was the major accommodation provided in Minnesota that she was allowed to work out of her own home office and is a question of fact as to whether it was provided here in Oregon. She believed she had her home office. Defendant contends she never was given a home office. That goes to the whole causation issue, which I don't really believe is before the court at this stage. The essence of that, again, the essence of the accommodation is not that no attempt was made, Judge Graber, but that the attempts that were made were either inadequate or failed to function properly or, as to the chair, for unreasonable reasons took too long, as demonstrated by the fact that it was literally never provided. I'd like to save the remainder of my time for rebuttal, if I may. Thank you. Good morning. May it please the Court. My name is Sandra Isom. I'm in-house counsel with Federal Express Corporation. And I'd like to start with a couple of cases that have to do with major life activities and substantial impairments that were brought to the Court's attention on reply by Ms. Stoltman, so I did not have a chance to address them prior to today. Can I ask one question first so that I make sure I'm following this correctly? I just reviewed again the findings and recommendations of the magistrate judge. Unless I missed it, I find nothing in there about accommodation. That's correct, Your Honor. The only issue he ruled upon was the issue of whether she was disabled. How does that affect this on appeal, on the accommodation issue? Well, the Ninth Circuit has said, and I believe the Flannery case it is, that the appellate court can affirm the lower court's decision on any grounds that were properly presented below. So we are a little bit in trouble because we don't have any findings or description from the magistrate judge anyway with regard to the accommodation and equipment left behind and that sort of thing. Well, I'm not sure that that presents a problem because, as I understand the case, there don't have to be findings, but the appellate court can't. Did you raise that as an alternative ground for summary judgment below? Yes. So you raised no disability, and if there was a disability, there was accommodation? Yes. Either that there was accommodation or the requested accommodations were an undue hardship, and then we also argue that there was no pretext in her termination. I must say that I find this to be, there's just so much here. There's so many facts here. It seems somewhat difficult to say that there's no issue of fact on the issue of disability. At the summary judgment stage, all we would have to conclude is that there is an issue of material fact, not that she necessarily would win. Why isn't the information that is in the briefs and is presented today by counsel enough to raise an issue with respect to the existence of a disability? Well, Your Honor, first of all, the reason that the evidence is not sufficient is because we really don't have a dispute. In fact, what we have is the plaintiff putting her subjective interpretation on the facts as they're stated in the record. But if that's a reasonable interpretation, why can't a trier of fact be allowed to draw inferences? Well, it's not reasonable because it basically misstates testimony and takes it out of context. And as I was looking at this preparing, I know I have no way in 10 minutes to unravel all of that, but a careful reading of the record. To give you an example, one of the things she says is that Ms. Klopotowskis gave differing reasons for her termination. Well, when you read the record, that's not the case. What happened was each time Ms. Klopotowskis would question Ms. Stoltman, Ms. Stoltman would tell her something that would cause Ms. Klopotowskis to ask follow-up questions that kind of took her from the original statements that Ms. Stoltman said. That's clear in the reading of the record. That is not you can't put the interpretation on the plaintiff that Ms. Stoltman does to say, well, Ms. Klopotowskis gave differing reasons. Well, that may be true with respect to the termination, but my question actually was focused on the existence of a disability, which is a front-end question. Okay. On the disability, the problem there is that this is a case where the plaintiff simply has not met her burden of showing a sufficient level of evidence that she was substantially impaired in a major life activity. Three reasons for that. One, she contradicts herself. The perfect example of that is she testified in her affidavit submitted on summary judgment that she could not hold her hands over her head and that she had to keep her hands down here because of the pain, that she absolutely could not get them over her head. We submitted in the record, which is not very a good copy, so I brought the actual copy of the Jurassic Park ride that was taken in a work function where she's right in the middle of the picture headed down the ride with her arms thrown straight up in the air. So you have the one situation where she's totally contradicting herself. Two, she contradicts even what her doctors say as far as what her limitations are. Her doctors say, we don't know of any issues she has with taking care of herself. We don't know of any issues she has with reading. And then she gives this very self-serving testimony that has no quantification. And, frankly, it's unclear or — Everybody's testimony is self-serving. I mean, that's sort of the definition of testifying on your own behalf. But why wouldn't a jury be entitled to believe her statement of her limitations? Well, for example, with respect to walking, at one point in her testimony, she says she can walk 15 minutes and then may need a break. Well, first of all, there's no evidence in the record as far as what the average population, how far they can walk without needing a break or without taking a break, and how many of us actually have to walk 15 minutes straight in a day. With respect to the — well, there's certain activities that she simply doesn't give. She doesn't quantify. She says, well, sometimes I can't take out the garbage, I need help. But we don't have anything to quantify how many times could you not take out the garbage. Who helped you? Assuming garbage, taking out garbage is some form of a major life activity, which we don't concede that. But my husband would tell you it's not for me. But there's just not enough evidence in the record. And the Eleventh Circuit has said you have to put in evidence of what the average population can do. But there's the district court case that was cited by Ms. Stoltman. I think that's the Jerry Witt v. Northwest Aluminum, the District of Oregon case, where the district court judge there said, well, no, they don't necessarily have to do that because the jury can figure that out. Well, if the jury can figure it out, the judges also can apply a standard to determine what is sufficient for the person. But a jury looks at conflicting facts and makes a fact finding. In this setting, in summary judgment, district court doesn't do that. That's what's troubling me about this. And as Judge Graber says, a mass of evidence. What if we find that there's inferences for disability? Then what happens? I'm sorry. What if we find the inferences show that she's disabled? Now what happens? Well, then we move to the next issue, which was reasonable accommodation. Okay. I just wanted to make sure that we're on the same page. Okay. Yes. Did you want me to move to that? Or I have a few more things on that. Substantial. I didn't want to interrupt Judge Graber. Okay. Actually, as long as we're sort of between topics, this is, again, just my own curiosity. Have the parties made any effort to make use of the court's mediation services in this case? We did have a telephone call, and I'm trying to remember the outcome because I've had some since then. We had a settlement conference over the phone and did discuss it with the mediator for about half an hour. Okay. I'm sorry. My memory is not what it used to be. So in the wit case that talks about, in that case, the plaintiff said that he couldn't walk more than 50 or 100 feet, and his doctor said that. He couldn't walk more than that without stopping. Well, 50 to 100 feet is a lot less than 15 minutes for one thing. And, for example, Ms. Sullivan at one point said, well, sometimes I can only walk two blocks, and then I have to stop because I have insane pain. Well, what does that mean? There's simply a failure to satisfy her burden to create sufficient evidence to even get it to a trier effect. What is insane pain? Where is the pain coming from? How long does the pain last? How long do you have to stop for? There's no quantification. There has to be some. Great questions for cross-examination at trial. Well, but summary judgment has a purpose, and there has to be at some point where a court can look at the situation and say this evidence is not sufficient. For example, all the line of cases that hold that a 25-pound lifting restriction is not a substantial limitation. How do the courts come to that conclusion? They're typically not relying on any doctor's expert testimony. They're relying on their own experiences to tell them that that just doesn't cut it. That is just not a substantial impairment. Well, because lifting heavy objects isn't a major life activity, but walking, standing, sitting, and those kinds of things are major life activities, and those are some of the issues that the plaintiff here is raising. Well, lifting is a major life activity, and walking is. It's the question of the duration, of the extent. Yes, lifting, maybe the average person doesn't have to lift more than 25 pounds, and maybe the average person doesn't have to walk more than five minutes at a time during the day. That's the question, is the duration, and that's one of the elements to look at. On the reasonable accommodation issue, your opponent focused on the chair, saying she was working from a lawn chair at home and she'd asked for a chair and didn't get it, and his view is that that was a failure to reasonably accommodate her problems. What's your response to that? The response to that is this. First of all, with respect to the chair, the lawn chair was her own personal lawn chair where she was allowed to work from home as a convenience. She was not faced there, but she was allowed. She had wooden chairs in storage. She had a FedEx desk. She had a headset. She had a FedEx office chair in storage that she didn't get out because it was too expensive. When she asked us for the chair, we simply asked for an updated prescription. She did not provide it. At first she said, I asked for the prescription. Then she said, I didn't ask for the prescription. She just didn't provide it. And by the time we did order a regular chair for her, by the time it came, she'd been terminated. I mean, managers work under budgets. This was an $800 chair she wanted compared to a $69 chair that most everybody else gets. It's not unreasonable for the employer to ask her to justify that request. Was there any issue about her asking you to move the items that were in storage out? Or was that something that is part of the accommodation formula? Actually, she never asked. I think I found that out during her deposition. There's no indication in the record for the witnesses that she ever let them know that that was in storage or that she asked for it to be brought out. So they would have to know that first before they could do anything. Thank you, counsel. Thank you. We have a little bit of rebuttal time remaining. I just want to clarify a few points as to lifting. Lifting heavy objects may not be a major life activity, but lifting is. And here the restriction at the time of termination was established in Exhibit 4 and 5 of 10 pounds occasionally. And given this Court's ruling in Thompson, I want to make sure that's clear on the record. Her testimony was during 1998 she could lift 10 pounds and up to 30 occasionally. But at the time of her termination in 1998, the medical restriction, Exhibit 4 and 5, was 10 pounds occasionally. That's it. That's important when getting to a comparison to Thompson, as the Court may have to. In addition, there were also no carrying at all, nothing over her head. Her own testimony is that she couldn't carry anything. So as to lifting and moving it, there's a distinction between Thompson where they could lift up. The inferences in favor of your client in those regards, would the chair, the keyboard, and the headset solve the problem or accommodation? As far as accommodating and officially recognizing her home office, there is a whole question of. . . I don't think they ever kicked her out of her home office. She just seemed to work out of there. I mean, was there a problem that they didn't want her working there? There's an issue as to whether she's actually working out of her home office or not that relates to the termination. Perhaps it doesn't relate to the accommodation issue, as long as they continue to allow her to work from home, whether it was a home office or not. Thank you. Thank you, counsel. The case just argued is submitted. And we will. . .
judges: Brunetti, Tg Nelson, Graber